Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH REID,<br><br>                              Plaintiff,<br><br>          vs.<br><br>IROBOT CORPORATION, COLIN M. ANGLE, MOHAMAD ALI, DEBORAH G. ELLINGER, KAREN M. GOLZ, RUEY-BIN KAO, EVA MANOLIS, ANDREW MILLER, and MICHELLE V. STACY,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)   Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)   Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Joseph Reid ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**<u>SUMMARY OF THE ACTION</u>**

1.      Plaintiff brings this stockholder action against IRobot Corporation ("iRobot" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts

to sell the Company to Amazon.com, Inc., through merger vehicle Martin Merger Sub, Inc. ("Merger Sub" and collectively with Parent, "Amazon") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in an August 5, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of iRobot's common stock will be converted into the right to receive $61.00 in cash, without interest.

3.      Thereafter, on August 25, 2022, iRobot filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in

favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for iRobot, provided by iRobot management to the Board and the Board's financial advisor Qatalyst Partners LP ("Qatalyst") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Qatalyst, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.      Plaintiff is a citizen of Washington and, at all times relevant hereto, has been an iRobot stockholder.

8.      Defendant iRobot designs, builds, and sells robots and home innovation products in the United States, Europe, the Middle East, Africa, Japan, and internationally. iRobot is incorporated in Delaware and has its principal place of business at 8 Crosby Drive Bedford, MA 01730.  Shares of iRobot common stock are traded on the Nasdaq Stock Exchange under the symbol "IRBT".

9.      Defendant Colin M. Angle ("Angle") has been a Director of the Company at all relevant times.  Angle also serves as the Company's Chief Executive Officer ("CEO").

10.      Defendant Mohamad Ali ("Ali") has been a director of the Company at all relevant times.

11.      Defendant Deborah G. Ellinger ("Ellinger") has been a director of the Company at all relevant times.

12.     Defendant Karen M. Golz ("Golz") has been a director of the Company at all relevant times.

13.     Defendant Ruey-Bin Kao ("Bin Kao") has been a director of the Company at all relevant times.

14.     Defendant Eva Manolis ("Manolis") has been a director of the Company at all relevant times.

15.     Defendant Andrew Miller ("Miller") has been a director of the Company at all relevant times.

16.     Defendant Michelle V. Stacy ("Stacy") has been a director of the Company at all relevant times.

17.     Defendant Dawn M. Zier ("Zier") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 9 - 18 are collectively referred to as the "Individual Defendants."

19.     Non-Party Amazon.com, Inc. operates an internet marketplace. Shares of Amazon.com, Inc. common stock are traded on the Nasdaq Stock Exchange under the symbol "AMZN."

20.     Non-Party Merger Sub is a wholly owned subsidiary of Amazon.com, Inc. created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to

confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the New York Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

24.     iRobot designs, builds, and sells robots and home innovation products in the United States, Europe, the Middle East, Africa, Japan, and internationally. The company offers floor care products, including Roomba floor vacuuming robots; Roomba accessories and consumables, such as the Clean Base Automatic Dirt Disposal, replacement dirt disposal bags for the Clean Base, filters, brushes, and batteries; Braava family of automatic floor mopping robots; and Braava accessories and consumables, which include cleaning solution, washable and disposable mopping pads, replacement tanks, and batteries, as well as subscription services. It also provides H1 Handheld Vacuum, a portable vacuum; H1 Handheld Vacuum accessories comprising filters, chargers, batteries, and an extension kit that converts the H1 Handheld Vacuum into a stick vacuum; air purifiers under the Aeris brand; Root robots to help children learn how to code; and

Create 2, a mobile robot platform that offers an opportunity for educators, developers, and high-school and college students to program behaviors, sounds, movements, and add additional electronics, as well as sells filters and fabric covers. The company sells its products through chain stores and other national retailers, distributors, and resellers, as well as through its website and app, and e-commerce websites. iRobot Corporation was incorporated in 1990 and is headquartered in Bedford, Massachusetts.

25.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 4, 2022 press release announcing its 2022 Q1 financial results, the Company highlighted that revenue in the U.S. grew 33% and the Company's cash, cash equivalents and short-term investments were $113.5 million.

26.     Speaking on the positive results, CEO Defendant Angle said, "Looking ahead, we plan to manage our business in ways that will enable us to navigate the potential for disruptions in the consumer marketplace, particularly in EMEA, primarily driven by a combination of heightened inflation and reduced consumer confidence stemming from the Russia-Ukraine war. While we still anticipate solid revenue growth in North America and our prospects in Japan are strengthening, we have reduced our full-year revenue growth expectations due primarily to the prospect of muted category growth in EMEA. Nevertheless, the combination of tariff-related savings and ongoing actions to carefully manage spending will help us preserve our profitability and enable us to slightly increase the high end of our FY22 EPS targets. We believe that our anticipated revenue and EPS trajectory in the second half of FY22 will leave us well positioned to deliver on our long-term financial targets."

27.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by iRobot.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

28.     Despite this upward trajectory, the Individual Defendants have caused iRobot to enter into the Proposed Transaction without providing requisite information to iRobot stockholders such as Plaintiff.

***The Flawed Sales Process***

29.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

30.     Notably, the Preliminary Proxy Statement reveals that the sales process was calculated with one goal in mind – to sell the Company to Amazon. The Preliminary proxy reveals that negotiations with Amazon date back as far as 2016.  Moreover, the Preliminary Proxy reveals that the Company conducted a cursory market check, reaching out to only one party. However, the Preliminary Proxy fails to disclose the product of such conversations with that party or why the market check conducted was so limited.

31.     The Preliminary proxy details that a Transaction Committee was formed to evaluate the Proposed Transaction, however, the Transaction Committee was comprised of at least one interested director with CEO defendant Angle participating in its activities.

32.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Amazon, whether this agreement differed from any other agreement with potentially interested third parties not specifically

mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

33.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

34.     On August 5, 2022, iRobot and Amazon issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SEATTLE & BEDFORD, Mass.--(BUSINESS WIRE)--Aug. 5, 2022**-- Today Amazon (NASDAQ:AMZN) and iRobot (NASDAQ:IRBT) announced that they have entered into a definitive merger agreement under which Amazon will acquire iRobot. iRobot has a history of making customers' lives easier with innovative cleaning products for the home. iRobot has continued to innovate with every product generation, solving hard problems to help give customers valuable time back in their day.
>
> "We know that saving time matters, and chores take precious time that can be better spent doing something that customers love," said Dave Limp, SVP of Amazon Devices. "Over many years, the iRobot team has proven its ability to reinvent how people clean with products that are incredibly practical and inventive—from cleaning when and where customers want while avoiding common obstacles in the home, to automatically emptying the collection bin. Customers love iRobot products—and I'm excited to work with the iRobot team to invent in ways that make customers' lives easier and more enjoyable."
>
> "Since we started iRobot, our team has been on a mission to create innovative, practical products that make customers' lives easier, leading to inventions like the Roomba and iRobot OS," said Colin Angle, chairman and CEO of iRobot. "Amazon shares our passion for building thoughtful innovations that empower people to do more at home, and I cannot think of a better place for our team to continue our mission. I'm hugely excited to be a part of Amazon and to see what we can build together for customers in the years ahead."
>
> Amazon will acquire iRobot for $61 per share in an all-cash transaction valued at approximately $1.7 billion, including iRobot's net debt. Completion of the transaction is subject to customary closing conditions, including approval by iRobot's shareholders and regulatory approvals. On completion, Colin Angle will remain as CEO of iRobot.

***Potential Conflicts of Interest***

35.     The breakdown of the benefits of the deal indicate that iRobot insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of iRobot.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| | Common Stock | |
| --- | --- | --- |
| | Number of Shares Beneficially Owned | Percent of Class |
| **Greater than 5% Stockholders** | | |
| BlackRock, Inc. | 5,016,703 | 18.42% |
| The Vanguard Group | 2,887,597 | 10.60% |
| PRIMECAP Management Company | 2,421,043 | 8.89% |
| Pictet Asset Management SA | 1,581,077 | 5.81% |
| | | |
| **Directors and Named Executive Officers:** | | |
| Colin Angle | 311,233 | 1.14% |
| Mohamad Ali | 20,441 | * |
| Deborah Ellinger | 21,016 | * |
| Karen Golz | — | * |
| Ruey-Bin Kao | 7,068 | * |
| Andrew Miller | 7,165 | * |
| Eva Manolis | 6,776 | * |
| Michelle Stacy | 15,520 | * |
| Jean Jacques Blanc | 8,576 | * |
| Faris Habbaba | 4,371 | * |
| Glen Weinstein | 29,341 | * |
| Julie Zeiler | 17,055 | * |
| All executive officers and directors as a group (14 individuals) | 486,265 | 1.79 |

37.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement fails to adequately account for these awards.

38.     In addition, certain employment agreements with certain iRobot executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Name | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Total ($) |
| --- | --- | --- | --- | --- |
| Colin Angle | 3,655,000 | 7,795,312 | 71,108 | 11,521,420 |
| Julie Zeiler | 2,250,000 | 2,258,647 | 48,918 | 4,557,565 |
| Glen Weinstein | 1,935,000 | 1,957,429 | 53,951 | 3,946,380 |
| Jean Jacques Blanc | 1,787,500 | 1,938,031 | 48,918 | 3,774,449 |
| Faris Habbaba | 1,628,000 | 2,519,666 | 18,221 | 4,165,887 |

39.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40.     Thus, while the Proposed Transaction is not in the best interests of iRobot, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

41.     On August 25, 2022, the iRobot Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

   a.   Adequate disclosure as to why the market check conducted was limited to only one party;

   b.   Adequate disclosure as to the results of conversations and negotiations with the sole party in the market check;

   c.   Adequate information as to why a committee comprised solely of disinterested directors was not formed to oversee the Proposed Transaction;

   d.   Whether the confidentiality agreements entered into by the Company with Amazon differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

   e.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

potentially interested third parties throughout the sales process, including The Consortium, would fall away; and

f.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning iRobot's Financial Projections*

43.    The Preliminary Proxy Statement fails to provide material information concerning financial projections for iRobot provided by iRobot management to the Board and Qatalyst and relied upon by Qatalyst in its analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

44.    Notably the Preliminary Proxy Statement reveals that as part of its analyses, Qatalyst reviewed internal information provided by management regarding the prospects and operations of the Company.

45.    The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that iRobot management provided to the Board, Qatalyst, and Qatalyst.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007)

46.    With regard to the *Company LRP* projections prepared by iRobot, the Preliminary Proxy Statement fails to disclose material line items, including the following:

a.   Non-GAAP Gross Profit, as well as any underlying inputs, metrics, and

assumptions necessary to calculate this metric, including specifically: GAAP gross profit and expenses related to the amortization of acquired intangible assets and stock-based compensation;

b.  Adjusted EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric;

c.  Non-GAAP operating income, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: operating income, amortization of acquired intangible assets, stock-based compensation expense, net merger, acquisition, and divestiture expense, intellectual property litigation expense, restructuring, tariff refunds, and "other expenses" used to calculate this metric;

d.  Non-GAAP Tax Adjustment, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the projected tax rate(s), projected net taxes, and tax benefits from operating losses; and

47.  With regard to the *Updated Company LRP* projections prepared by iRobot, the Preliminary Proxy Statement fails to disclose material line items, including the following:

a.  Non-GAAP Gross Profit, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: GAAP gross profit and expenses related to the amortization of acquired intangible assets and stock-based compensation;

b.  Adjusted EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric;

c. Non-GAAP operating income, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: operating income, amortization of acquired intangible assets, stock-based compensation expense, net merger, acquisition, and divestiture expense, intellectual property litigation expense, restructuring, tariff refunds, and "other expenses" used to calculate this metric;

d. Non-GAAP Tax Adjustment, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: the projected tax rate(s), projected net taxes, and tax benefits from operating losses; and

48. With regard to the *Accelerated Market Recovery Scenario* projections prepared by iRobot, the Preliminary Proxy Statement fails to disclose material line items, including the following:

a. Non-GAAP operating income, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: operating income, adding back amortization of acquired intangible assets, stock-based compensation expense, net merger, acquisition, and divestiture expense, intellectual property litigation expense, restructuring, tariff refunds, and any "other expenses" used to calculate this metric; and

b. Non-GAAP Gross Profit, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: GAAP gross profit, expenses related to the amortization of acquired intangible assets, and stock-based compensation.

49.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50.     The Preliminary Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various cases of projections rely.

51.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

52.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Qatalyst's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Qatalyst*

53.     In the Preliminary Proxy Statement, Qatalyst describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

54.     With respect to the *Illustrative Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

        a.   The inputs, metrics, and assumptions used to determine discount rates ranging

from 11.5% to 15.5%;

b. The Company's weighted average cost of capital;

c. The terminal value for iRobot calculated;

d. The inputs, metrics, and assumptions used to determine range of fully diluted enterprise value to next-twelve-months estimated EBITDA of 6.0x to 12.0x;

e. The number of fully diluted outstanding shares of Company stock;

f. The value of Company options, Company RSU awards, Company PSU awards and Company DSU awards, outstanding as of the close of business on August 3, 2022; and

g. The numeric degree of estimated dilution used to adjust the Company's terminal value for this analysis.

55.     With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

a. The fully-diluted enterprise value for the Company;

b. The inputs, metrics, and assumptions used to determine a CY2023E Revenue Multiple for the Company of 0.79x;

c. The inputs, metrics, and assumptions used to determine a representative CY2023E Revenue Multiple range of 0.60 to 0.85x;

d. The number of fully diluted outstanding shares of Company common stock;

e. The value of Company options, Company RSU awards, Company PSU awards and Company DSU awards, outstanding as of the close of business on August 3, 2022;

f. The inputs, metrics, and assumptions necessary to determine a CY2023E

EBITDA Multiple for the Company of 12.4x; and

g.   The inputs, metrics, and assumptions necessary to determine a representative range of CY2023E EBITDA Multiples of 7.0x to 13.0x.

56.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57.   Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public iRobot stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

58.   Plaintiff repeats all previous allegations as if set forth in full herein.

59.   Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60.   Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62.     The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64.     The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

65.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

66.     Plaintiff repeats all previous allegations as if set forth in full herein.

67.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed

the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of iRobot's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

70.     The Individual Defendants acted as controlling persons of iRobot within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause iRobot to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled iRobot and all of its employees.  As alleged above, iRobot is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to comply with the Exchange Act and to

disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.       Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 1, 2022                    **BRODSKY & SMITH**

                                         By:   */s/ Evan J. Smith*
                                              Evan J. Smith
                                              240 Mineola Boulevard
                                              Mineola, NY  11501
                                              Phone:  (516) 741-4977
                                              Facsimile (561) 741-0626

                                              *Counsel for Plaintiff*